IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JAMES ANTHONY BURGESS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:13-cv-0102** |
| | ) | |
| **ERIC QUALLS,[1] Warden,** | ) | **Judge Sharp** |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION

Petitioner James Anthony Burgess, a prisoner in state custody at the Bledsoe County Correctional Complex, has filed a *pro se* petition under 28 U.S.C. § 2254 for a writ of habeas corpus (ECF No. 1). The respondent has filed an answer in opposition to the petition, along with a complete copy of the underlying state-court record, and the petitioner filed a reply. The petition is ripe for review, and this Court has jurisdiction. 28 U.S.C. § 2241(d). For the reasons set forth herein, the petition will be denied.

## I.    PROCEDURAL BACKGROUND

On January 22, 2009, the petitioner was found guilty by a Putnam County Jury on two counts of felony murder, two counts of second-degree murder (which were merged with the felony-murder convictions), one count of especially aggravated burglary, and one count of reckless endangerment. The jury determined that the petitioner should be sentenced to life in prison for each felony-murder conviction, and the court imposed a total effective sentence of two consecutive life sentences. (*See* ECF No. 8-1, at 180–85 (corrected judgments).) Burgess's conviction and sentence were affirmed on direct appeal. *State v. Burgess*, No. M2009-00897-CCA-R3-CD, 2010 WL 3025524 (Tenn. Ct. Crim. App. Aug. 4, 2010), *perm app. denied* (Tenn. Dec. 7, 2010.).[2] On March 28, 2011, he filed a *pro se* post-conviction petition in the

---

[1]  Eric Qualls, who was appointed as warden of the Bledsoe County Correctional Complex on November 18, 2013, is automatically substituted as the respondent in this case. Fed. R. Civ. P. 25(d). **The Clerk is directed to make this substitution on the docket.**

[2]  The appeal was successful in one respect: Burgess argued and the state conceded that his conviction for especially aggravated burglary should be modified to a conviction for aggravated burglary because Burgess was also convicted of felony murder. The Tennessee Court of Criminal Appeals agreed and remanded for resentencing on that count. On remand, the conviction for especially aggravated burglary was modified to aggravated burglary, and the original eleven-year sentence was reduced to

state court. (ECF No. 8-23, at 4.) Post-conviction counsel was appointed, who elected not to file an amended petition. (ECF No. 8-23, at 116.) After conducting a hearing, the trial court entered an order denying the petition. (ECF No. 8-23, at 128–36.) That decision was affirmed as well. *Burgess v. State*, No. M2012-01308-CCA-R3-PC, 2013 WL 1182990 (Tenn. Ct. Crim. App. March 21, 2013), *application for perm. app. dismissed* (Tenn. Sept. 11, 2013).

Burgess filed his § 2254 petition in this Court on October 3, 2013 (ECF No. 1, at 15 (petitioner's oath as to the date the petition was placed in the prison mailing system)). The respondent concedes that the petition is timely. (ECF No. 7, at 2.)

## II.    STATEMENT OF FACTS

The Tennessee Court of Criminal Appeals summarized the testimony presented during trial as follows:[3]

> Appellant and the victim, Elizabeth Burgess, began dating in 1998. At the time, the victim was already pregnant with her first child, M.C. Appellant was with the victim when M.C. was born, and Appellant took an active role in raising the child. On June 30, 2000, Appellant and the victim got married. On December 17, 2002, J.B., the son of the victim and Appellant, was born. Shortly after the birth of J.B., the marriage began to deteriorate.
>
> By January 2007, the marriage was beyond repair. According to Appellant, the victim told him at that time that she was unhappy with him and unhappy in the marriage. Appellant began sleeping at the ambulance station where he worked as a paramedic. By March 2007, he was living at a friend's house. During this time period, Appellant began dating a woman named Jackie Reid, and the victim began dating a man named Jimmy Prewitt, the other victim.
>
> On February 22, 2007, the chancery court entered an order which ordered Appellant to have no contact with the victim. Appellant testified that he was not present when the court ruled on the order of protection. He admitted that he signed it at a later time. On March 26, 2007, the chancery court entered an *ex parte* order of protection in which Appellant was ordered to have no contact or communication with the victim. The order also set a hearing for April 5, 2007. On April 5, 2007, the court entered an order continuing the matter until a hearing on April 20, 2007, and extending the *ex parte* order of protection.
>
> Appellant had visitation with J.B. on May 1 and May 3, 2007. On May 5, 2007, according to Appellant, the victim sent him a text message that she needed child support

three years. Because this sentence runs concurrently with one of the life sentences, the modification had no effect on the total effective sentence.

[3] The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

money. On the evening of May 5, 2007, Appellant sent the victim several text messages to try to get her to talk to him about J.B. and whether Mr. Prewitt was spending the night at the house. The victim sent a reply that she was eating supper and refused to talk to Appellant at that time. She told him to send her a text message or leave a voice mail instead. Appellant found the victim, Mr. Prewitt, and the children, M.C. and J.B., at Cheddar's restaurant. Appellant approached them in the parking lot. Words were exchanged between Appellant, the victim, and Mr. Prewitt. The victim drove off with Mr. Prewitt and the children. Appellant was angry and sat in his car.

Shortly thereafter, Appellant began driving to the victim's home which he formerly shared with her. As he drove to the house, he called Ms. Reid and told her that he could not "take this anymore," and he was going to "kill her," meaning the victim. Ms. Reid testified that he might have said "kill them" instead of "kill her." When Appellant arrived at the house, the victim and Mr. Prewitt were outside on the front porch. The victim said that she did not want to talk to him and the victim and Mr. Prewitt went inside the house. Appellant walked to his car and pulled out a gun from his duffle bag. According to Appellant, he was attending a picnic later that day and intended to do some target practice with a friend. Appellant loaded two magazines with ammunition. He placed one magazine in the gun. Appellant walked to the front door. He could see M.C. and J.B. in M.C.'s room through the window which is right next to the front door. Appellant knocked on the door. When the victim and Mr. Prewitt did not open the door, Appellant fired into the front door six times. Using the gun, he broke a side window next to the door. Appellant reached through the broken window and unlocked the door. Appellant walked into the living room and shot the victim nine times.

Appellant followed Mr. Prewitt into M.C.'s room. The children were standing in front of the raised window. Appellant had told them long ago to crawl out of the window and get out of the house when the alarm was set off. Mr. Prewitt ran to the window with the children and pushed the children behind him. Appellant entered the room about where the children were standing and began shooting Mr. Prewitt. Mr. Prewitt climbed out of the window, and Appellant followed him. Mr. Prewitt was shot five times and one of the wounds was at his left temple. The shot to Mr. Prewitt's temple had been fired from two and a half to three feet away.

According to Appellant, after shooting the victim and Mr. Prewitt, his first thoughts were of the children. He went inside the house to make sure they were okay. He hugged and kissed them. He went to the living room and saw the victim's body. He knew that she was dead. He held her hand and told her that he loved her. Appellant disconnected the house alarm and called 911. He told the operator that he had killed the victim because he hated her and she hated him. When the 911 operator asked if the victim was dead, Appellant replied that he hoped so.

Appellant sat on the front porch of the house and considered committing suicide. However, a friend called his cellphone and talked Appellant out of it. While Appellant sat on the front porch, local law enforcement surrounded the house and set up a perimeter with a SWAT team. Local law enforcement had been informed that Appellant was armed by the 911 operator. After about three hours, the officers were able to approach Appellant and arrest him. The children were in the house until Appellant was arrested.

When the officers approached the house, they saw a dead man in the front yard. Upon entering the house, they saw a body in the living room and a great deal of blood. The officers retrieved the children from the bedroom and stood in a line in front of the victim's body, so the children would not have to see their mother's body.

Two days later, on May 7, 2007, the court filed its order stemming from the hearing on April 20 regarding child support and visitation. This ordered modified the order of protection to state that the only contact between the parties would be to set visitation.

The order set out Appellant would have visitation with J.B. two days a week. In addition, the order stated that the first child support payment should be made on May 1, 2007.

*State v. Burgess*, 2010 WL 3025524, at *1–3.

## III.    ISSUES PRESENTED FOR REVIEW

In his present petition, Burgess asserts the following claims for relief:

1. That the prosecutor engaged in prosecutorial misconduct, thereby violating the petitioner's right to due process, by "submitting false evidence to the court" (ECF No. 1, at 6), namely by presenting orders of protection entered in the petitioner's divorce proceedings.

2. That the petitioner's Fourth Amendment rights were violated by the illegal search and seizure of evidence from his residence and vehicle.

3. That the indictment against him was "faulty" (ECF No. 1, at 9) because it included four counts of first-degree murder but named only two murder victims, because the court did not have jurisdiction to charge Burgess with burglary of the home he owned with his wife, and because the burglary charge failed to set out what felony he intended to commit.

4. That the petitioner's trial counsel was ineffective insofar as he

(a) failed to object to "false evidence" and misstatements of the evidence introduced at trial;

(b) failed to properly investigate the facts or interview the state's witnesses.

(c)  failed to communicate with the petitioner during the appeal phase;

(d) failed to call Dr. Eric Engum, Dr. Mark Maltman, or attorney Luke Chaffin as witnesses; and

(e) failed to raise the issue of self-defense.[4]

5. That post-conviction counsel was ineffective in that she failed to investigate the case, refused to interview or call witnesses other than the petitioner and his trial counsel at the post-conviction hearing, misrepresented to the court that a no-contact order had been entered by the chancery court on February

---

[4] The respondent identifies ten specific claims of ineffective assistance of trial counsel, including the five listed above and five others: (1) failure to move to suppress items found a during a search of the petitioner's vehicle; (2) failure to object to photographs of the deceased at the crime scene; (3) failure to provide the petitioner with discovery; (4) failure to challenge the indictment; and (5) preparation of the direct appeal brief when trial counsel supposedly knew the petitioner had requested new counsel. (ECF No. 7, at 6.) The Court has read the habeas petition and attached memorandum closely and does not find that it raises any such claims, though the claims identified by the respondent were raised in the petitioner's state post-conviction petition and appeal, and were addressed by the Tennessee Court of Criminal Appeals. *See Burgess*, 2013 WL 1182990, at *1 (listing claims), *5–6 (resolving claims).

22, 2007, failed to address other issues the petitioner wanted to pursue, and failed to pursue an appeal of the denial of post-conviction relief to the Tennessee Supreme Court.

## IV.     STANDARD OF REVIEW

### A.     Defaulted or Unexhausted Claims

A federal district court will not entertain a petition for the writ of habeas corpus unless the petitioner has first exhausted all available state-court remedies for each claim in his petition. 28 U.S.C. § 2254(b)(1). While exhaustion is not a jurisdictional requirement, it is a strictly enforced doctrine which promotes comity between the states and the federal government by giving the states an initial opportunity to pass upon and correct alleged violations of their prisoners' federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Consequently, as a condition precedent to seeking federal habeas corpus relief, the petitioner is required to fairly present his claims to every available level of the state court system. *See Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) ("[A] federal habeas petitioner . . . [must] provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim."). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). Once a petitioner's federal claims have been raised in the highest state court available,[5] the exhaustion requirement is satisfied, even if that court refused to consider the claims. *Manning v. Alexander*, 912 F.2d 878, 883 (6th Cir. 1990).

A habeas petitioner bears the burden of demonstrating that he has properly and fully exhausted his available state court remedies with respect to the claims he presents for federal habeas review. *Prather v. Rees*, 822 F.2d 1418, 1420 n.3 (6th Cir. 1987) (citation omitted). If a habeas petitioner retains the right under state law to raise a claim by any available procedure, he has not exhausted that claim. 28 U.S.C. § 2254(c). Ordinarily, habeas petitions containing unexhausted claims are dismissed without prejudice in order to permit the petitioner the opportunity to pursue them in state court. *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002).

---

[5] In Tennessee, review by the state Supreme Court is not required for exhaustion. Instead, "once the Court of Criminal Appeals has denied a claim of error, 'the litigant shall be deemed to have exhausted all available state remedies available for that claim.'" *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. S. Ct. R. 39).

If, however, an unexhausted claim would be procedurally barred under state law, for instance by a statute of limitations or a state rule barring successive petitions, then the claim is deemed exhausted (because no further state review is available) but procedurally defaulted (because it was not presented to a state court for review), and may not be considered by the federal court on habeas review except under extraordinary circumstances. *Alley*, 307 F.3d at 85–86 (citations omitted); *In re Cook*, 215 F.3d 606, 607–08 (6th Cir. 2000). Specifically, in order to obtain consideration of a claim that is procedurally defaulted, a petitioner must demonstrate both "cause" for the procedural default and actual prejudice resulting from the alleged constitutional errors, or alternatively that failure to consider the claims will result in a "fundamental miscarriage of justice." *Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012), *cert. denied*, --- U.S. ----, 133 S. Ct. 311 (2012) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

**B.      Standard of Review of Fully Exhausted Claims**

Even when a petitioner's application for a writ of habeas corpus raises only federal constitutional claims that have been properly exhausted in the state courts, this Court's review of the state court's resolution of those issues remains quite limited. The standard for reviewing applications for the writ of habeas corpus is set forth in 28 U.S.C. § 2254(d). This section states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* In other words, a federal court is bound by a state court's adjudication of a petitioner's legal claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Further, this Court must presume the correctness of state court factual determinations, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous."), *abrogated on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995).

With these principles in mind, the court will turn to the examination of the claims raised in Burgess's petition for habeas relief.

## V.    ANALYSIS AND DISCUSSION

### A.    Prosecutorial Misconduct

The petitioner claims that he suffered a violation of his due process rights as a result of prosecutorial misconduct. Specifically, he claims that the prosecution obtained the burglary conviction in his case without providing documentation or factual evidence showing that there was a valid order of protection against him. The petitioner raised a version of this claim in his direct appeal, where he argued that "the conviction for Especially Aggravated Burglary should be vacated on state and federal constitutional grounds that due process is violated when a person is convicted of burglarizing his own home where no adequate notice is given that Defendant was being deprived of his property right." (ECF No. 8-13, at 4 (Pet'r's Dir. Appeal Brief, "Issues Presented").) The petitioner never characterized the issue in state court as one of prosecutorial misconduct.[6]

As discussed above, before this Court may grant habeas relief to a state prisoner, the prisoner must exhaust the remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275–77 (1971), *cited in Duncan v. Henry*, 513 U.S. 364, 365 (1995). In the Sixth Circuit, the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court. *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987). The prosecutorial-misconduct theory of recovery was never "fully and fairly" presented to

---

[6] The state appellate court rejected the petitioner's due-process "notice" claim, but nonetheless carefully considered the question of whether the petitioner could be deemed an "owner" of the residence he was convicted of burglarizing. The court noted that "owner" was defined by the burglary statutes as "[a] person in lawful possession of property whether the possession is actual or constructive. 'Owner' does not include a person, who is restrained from the property or habitation by a valid court order or order of protection, other than an *ex parte* order of protection, obtained by the person maintaining residence on the property." *State v. Burgess*, 2010 WL 3025524, at *4 (quoting Tenn. Code Ann. § 39-14-401(3)). The issue was whether an order of protection in effect at the time of the burglary and murders was or was not *ex parte.* Upon close review of the record, the court concluded that the order in effect at the time of the murders was not *ex parte*, and therefore that the petitioner was statutorily excluded from the definition of "owner" of the residence he was convicted of burglarizing. *Id.* at *4–6.

the state courts.

At this point, however, the petitioner is barred from presenting the claim in the state courts by Tennessee's one-petition rule governing the filing of post-conviction petitions. Tenn. Code Ann. § 40-30-102(c). He does not argue that any of the circumstances enumerated in Tenn. Code Ann. § 40-30-117(a) permits him to re-open his post-conviction petition in the Tennessee courts. The prosecutorial misconduct claim is therefore considered to be exhausted (because no further state review is available) but procedurally defaulted (because no state-court review was ever conducted). The petitioner has not demonstrated cause for the procedural default or actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012), *cert. denied*, --- U.S. ----, 133 S. Ct. 311 (2012) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

Because the claim is procedurally defaulted, the Court does not reach its substantive merits, but finds that the petitioner is not entitled to relief on the basis of this claim.

### B. Unconstitutional Search and Seizure

The petitioner also claims that the search of his home and vehicle and the seizure of evidence violated his rights under the Fourth Amendment. This claim too was never presented to the state courts and is procedurally defaulted.

Moreover, Fourth Amendment claims are not cognizable on habeas review where the state has provided a full and fair opportunity to litigate the illegal-search-and-seizure claim. *Stone v. Powell*, 428 U.S. 465, 494–95 (1976); *Ray v. United States*, 721 F.3d 758, 762 (6th Cir. 2013) (applying *Stone* in § 2255 context). For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which the petitioner could raise the claim, and presentation of the claim must not have been frustrated by a failure of that mechanism. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982). "The relevant inquiry is whether a habeas petitioner had the opportunity to litigate his claim, not whether he did in fact did so or even whether the claim was correctly decided." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996).

In this case, the petitioner did not move in the trial court to suppress the evidence found in his residence or vehicle, though he did raise a state post-conviction ineffective-assistance claim based on

trial counsel's failure to attack the validity of the search of his vehicle. However, the petitioner has not shown that he was barred by any state procedural mechanism from bringing a motion to suppress.[7]

The petitioner is not entitled to relief on the basis of this claim.

### C.     "Faulty" Indictment

The petitioner claims that he was placed in double jeopardy by being indicted on four counts of first-degree murder, but where only two murder victims were named in the indictment. In addition, he claims that the indictment was "faulty" (ECF No. 1, at 9), because the court did not have jurisdiction to charge Burgess with burglary of the home he owned with his wife, and because the burglary charge failed to set out what felony he intended to commit.

In state court, Burgess claimed that his counsel was ineffective for failing to challenge the faulty indictment. The state courts rejected this claim on the basis that the indictment was not deficient. Burgess never raised a free-standing claim that the indictment itself violated his constitutional rights. This claim too is therefore procedurally defaulted for the same reasons as the claims discussed above.

### D.     Ineffective Assistance of Trial Counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held that in order to successfully claim that a lawyer's assistance was so ineffective as to violate the Sixth Amendment a defendant must meet two requirements. "First, the defendant must show that counsel's performance was deficient." *Id.* at 687. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* As discussed above, however, federal habeas relief may not be granted under 28 U.S.C. § 2254 unless the petitioner shows that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the United States Supreme Court, § 2254(d)(1); *Williams v. Taylor*,

---

[7] Burgess also failed to establish that his trial counsel was ineffective for not filing such a motion. The state appellate court disposed of this issue as follows:

> Appellant claims that counsel was ineffective for failing to move to suppress items found during a search of appellant's vehicle. This claim lacks any merit. First, the search of appellant's car was pursuant to a search warrant covering the victim's property, which included any vehicles at the property. Second, the only items that were taken from the vehicle were items that were within the plain sight of investigators and subject to seizure without a warrant. Finally, the post-conviction court accredited trial counsel's testimony that "what was found in the car neither helped nor hurt" the appellant's cause. Appellant fails to show what evidence would have been suppressed and how that would have changed the outcome of the trial.

*Burgess*, 2013 WL 1182990, at *5.

529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Thus, when a claim of ineffective assistance of counsel is raised in a federal habeas petition, the question to be resolved is *not* whether the petitioner's counsel was ineffective. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, --- U.S. ----, 131 S. Ct. 770, 785 (2011). As the Supreme Court clarified in *Harrington*,

> This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington*, 131 S. Ct. at 786 (internal quotation marks and citation omitted).

The state court, with regard to the petitioner's ineffective-assistance claims, correctly articulated and discussed at some length the standard established by *Strickland*, and applied *Strickland* to the claims raised in the present habeas petition as follows:

> In regards to the claims that his trial counsel should have objected to "false evidence," appellant has failed to show what "evidence" was allegedly false. While appellant has previously called into question the status of the order of protection, this Court extensively reviewed these issues on direct appeal and found in the state's favor.

> Appellant also claims that trial counsel was ineffective for failing to communicate with him during the filing of the direct appeal. However, appellant has never specified how the outcome would have been different had appellant been consulted. Likewise, this issue lacks merit.

> Any claims of appellant for ineffective assistance of counsel due to trial counsel's failing to call Dr. Mark Maltman, Luke Chaffin or Eric Engum as witnesses also fail. Appellant failed to call these witnesses at the post-conviction hearing. Therefore, we could only speculate as to how these witnesses would have testified. Furthermore, the testimony of trial counsel was that a tactical decision was made not to call these witnesses because their testimony would not have been favorable to appellant's cause.

> . . . .

> The issue of trial counsel's failure to properly investigate the facts or interview the state's witnesses also lacks any merit. Appellant fails to supply any proof that counsel failed to investigate the facts of his case, or how the alleged lack of investigation prejudiced his trial. Likewise, appellant has not identified which witnesses counsel should have interviewed, what the witnesses would have told his counsel or how the information

that the witnesses provided counsel could have affected the outcome of the trial.

> Appellant's argument that trial counsel was deficient for failing to raise the issue of self-defense is meritless. Counsel's testimony at the post-conviction hearing was clear that he felt that bringing up the issue of self-defense would eviscerate the argument that appellant was acting in the heat of passion rather than by premeditation. Trial counsel was attempting to have the jury focus on the fact that appellant was going through a divorce, taking psychotropic medication, and had just gotten into a heated encounter with both victims prior to the killings. It was noted by the post-conviction court that the evidence at trial was that appellant shot through the front door of the victim's house prior to forcing entry into the home; shot his estranged wife; and then chased the second victim out a window prior to shooting him in the head from a distance of three feet. The attempt to claim self defense would have been a poor tactic, and trial counsel prudently avoided this defense.

*Burgess*, 2013 WL 1182990, at *5–6.

Having examined the state court's rulings on all these issues, this Court concludes that the petitioner has not shown the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law," or that it "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d). Accordingly, the petitioner s not entitled to relief on the basis of these claims.

### E.      Ineffective Assistance of Post-Conviction Counsel

The petitioner's claims of ineffective assistance of post-conviction counsel fail to state cognizable habeas claims, because the petitioner has no constitutional right to an attorney in state post-conviction proceedings, and therefore no right to *effective* counsel at that stage. *Coleman v. Thompson*, 501 U.S. 722, 752 (1991). The Supreme Court's recent opinions in *Martinez v. Ryan*, --- U.S. ----, 132 S. Ct. 1309 (2012). and *Trevino v. Thaler*, --- U.S. ----, 133 S. Ct. 1911 (2013), did not upset that fundamental principle and in any event have no application here.

The petitioner is not entitled to relief on the basis of his claims of ineffective assistance of post-conviction counsel.

## VI.      CONCLUSION

For the reasons set forth herein, James Burgess's petition under § 2254 will be denied and this matter dismissed with prejudice. An appropriate order is filed herewith.

Kevin H. Sharp
United States District Judge